AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

**FILED**

MAY 0 2 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| 3520 Pennsylvania, St. Louis Missouri, 63118,  a single-family residence with a brick façade. The address sits on the east side of the street with the front door facing west. The numbers for the address are located above the front door on the awning of a porch. The porch also has white stone located on two pillars on either side of the door, see "Subject Location #1" in attached affidavit, located within the Eastern District of Missouri. | ) ) ) ) ) ) |

Case No.    4:18 MJ 5111 NAB

## APPLICATION FOR A SEARCH WARRANT

I, Christopher Grimm , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:
3520 Pennsylvania, St. Louis Missouri, 63118, a single-family residence with a brick façade. The address sits on the east side of the street with the front door facing west. The numbers for the address are located above the front door on the awning of a porch. The porch also has white stone located on two pillars on either side of the door, see "Subject Location #1" in attached affidavit,

located in the _____EASTERN_____ District of _____MISSOURI_____ , there is now concealed

See Attachment A

The basis for the search under Fed. R. Crim. P.  41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21:841(a)(1) | Possession with intent to distribute narcotics |
| 21:846 | Conspiracy to distribute narcotics |
| 18:924(c) | Possession of a firearm in furtherance of  a drug trafficking crime |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of        days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Christopher Grimm, DEA

*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____May 2, 2018____

City and state:  St. Louis, MO

*Judge's signature*

Honorable Nannette A. Baker, U.S. Magistrate Judge

*Printed name and title*

AUSA:  Beth Orwick

FILED

MAY 0 2 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO

### AFFIDAVIT

Christopher M. Grimm, being duly sworn, deposes and says that he is a Special Agent with

the Drug Enforcement Administration, duly appointed according to law and acting as such.

### I. Introduction

I have been employed with the Drug Enforcement Administration (DEA) since September

2010, and I am currently assigned to an Enforcement Group of the St. Louis Division Office. Prior

to my assignment to the St. Louis Division Office, I was assigned to the Bakersfield Resident

Office in the San Francisco Field Division in California. Prior to my employment with the DEA,

I was a police officer and detective for the St. Louis County Police Department for approximately

six years. During the course of my law enforcement experience I have participated in numerous

investigations involving controlled substances.  I have conducted investigations of a variety of

illegal drug-trafficking and money-laundering organizations.  I have participated in investigations

that led to the seizure of illegal drugs, weapons, and assets derived from the sale of illegal drugs,

and the subsequent felony arrests of those individuals involved.  I have participated in numerous

drug-related training courses throughout my law enforcement career.  I am familiar with and have

used normal methods of investigation, including, but not limited to, visual and electronic

surveillance, questioning of witnesses and defendants, the use of search and arrest warrants, the

use of informants, the use of pen registers, the utilization of confidential sources and undercover

agents, and the use of court-authorized wire and electronic intercepts.

The facts alleged in this affidavit come from my own investigation, my training and

experience, and information obtained from other investigators and witnesses. As this affidavit is

submitted for the limited purpose of establishing probable cause to search the residences located

within the Eastern District of Missouri at **3520 Pennsylvania and 3200 Dakota, #2F:**

1

**Subject Location #1: 3520 Pennsylvania, St. Louis Missouri, 63118, is a single-family residence with a brick façade. The address sits on the east side of the street with the front door facing west. The numbers for the address are located above the front door on the awning of a porch. The porch also has white stone located on two pillars on either side of the door, (hereinafter referred to as subject location #1).**

**Subject Location #2: 3200 Dakota, #2F, St. Louis Missouri, 63111, is a two-family subdivided residence located on the south side of the street with the front door facing north. It has a brick façade and a small front porch that lead to two doors with white storm doors. The door located on the west side of the building has broken glass on the door, (hereinafter referred to as subject location #2).**

Specifically, there is probable cause to believe that the **subject locations** contain evidence, fruits and instrumentalities of violations of: Title 21, U.S.C. §§ 841(a)(1), 846 (possession with intent to distribute narcotics and conspiracy to distribute narcotics) and Title 18 U.S.C. §924(c) (possession of a firearm in furtherance of a drug trafficking crime).

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to search the residences located at: **subject location #1 and subject location #2**; as part of a criminal investigation, it does not set forth all of my knowledge regarding this matter, and sets forth only those facts believed necessary to establish probable cause that violations of Title 21, U.S.C. §§ 841(a)(1), 846, 843(b), have occurred, are occurring, and will occur.

## II. LOCATION TO BE SEARCHED

The Affiant is requesting a search warrant for the subject location as described below and as detailed herein:



**3520 Pennsylvania
St. Louis, Missouri, 63118
(Subject Location #1)**

**Subject location #1** is a single-family residence with a brick façade. The address sits on the east side of the street with the front door facing west. The numbers for the address are located above the front door on the awning of a porch. The porch also has white stone located on two pillars on either side of the door. During the investigation, investigators identified **subject location #1** as a potential stash location for the Pressure Gang.

3



**3200 Dakota St. #2F**
**St. Louis, Missouri 63111**
**(Subject Location #2)**

**Subject Location #2** is a two-family subdivided residence located on the south side of the street with the front door facing north. It has a brick façade and a small front porch that leads to two doors with white storm doors. Unit 2F is located on the west side of the building and has broken glass on the door. During the investigation, investigators identified **subject location #2** as a potential stash location for Amontae GORDON.

4

### III. PROBABLE CAUSE

#### Background

1.      The undersigned is presently investigating narcotics trafficking as well as acts of violence between the 27 Accomac criminal street gang (hereinafter 27 Mac) and rival gang the Grape Street Crips.  27 Mac and the Grape Street Crips are engaged in an ongoing turf war over narcotics trafficking territory. In addition, there have been frequent shootings and murders of members of both gangs in retaliation and in attempts to gain control of areas for narcotics distribution. The investigation into 27 Mac and Grape Street has led into an investigation into the Pressure Gang. As part of this investigation into these street gangs investigators have observed techniques and patterns used by street level gangs in their narcotics trafficking. Some of these patterns include the use of stolen vehicles for narcotics sales and drive by shootings, stolen plates, stash locations for narcotics and firearms, social media usage for narcotics distribution, and other  techniques and patterns described in the below affidavit.

2.      In July of 2017, investigators were advised of the murder of Shemarcus McCullough, who was a Grape Street Crip member. Investigators later determined that, Amontae GORDON, Robert WHITE Jr., Jimmie PAMPKIN and other unknown 27 Mac members, were present at a theme park (Six Flags) with McCullough just prior to the shooting. GORDON and the 27 Mac members left in separate vehicles and were on the same highway and travelling in the same direction as McCullough at the time of his murder.

3.      In October of 2017, 27 Mac member Robert White Jr. was murdered in East St. Louis. White was also present at Six Flags along with GORDON and several other members of the 27 Mac gang just prior to McCullough's murder. Following White's murder,

investigators are aware of acts of retaliation, including one attempted drive-by shooting, which investigators prevented from occurring. Investigators are aware of two additional drive-by shootings that occurred in retaliation for White's murder involving members of the 27 Mac gang several days later.

4.      In December of 2017, investigators conducted a federal search warrant at a stash location for the 27 Mac gang located at 5524 Holborn, St. Louis, Missouri, 63121. Investigators recovered seventeen firearms from the residence, as well as cocaine and methamphetamine. Four members of the 27 Mac gang were indicted on charges resulting from those seizures.[1] GORDON had been in contact with several of the indicted 27 Mac members prior to their arrest through telephonic and social media.  GORDON has frequently professed his association with the 27 Mac gang on social media.

5.      Following the search warrant on Holborn and subsequent indictments of four members of 27 Mac, investigators began monitoring GORDON's public Facebook page, which was under the name "Amontae Gordon."  Investigators observed multiple photos and videos from 2017 and 2018, where GORDON posts himself in possession of marijuana that he indicates is for sale and with multiple handguns and assault rifles.

6.      Investigators became aware of ████████ and the Pressure Gang while monitoring GORDON's Facebook page.  In a live video uploaded to the page on January 31, 2018, GORDON filmed himself, one juvenile, and ████████ holding four handguns including a Tech 9 semi-automatic machine pistol.  Investigators also observed that GORDON has numerous public posts of photos with an individual later identified as ████████ ████████ Investigators also observed that he frequently commented on

---

[1] See USA v. Cornelius WATSON et al, 4:18-CR-00007-HEA-NAB.

posts on ██████████ ' Facebook page. Following the arrests, 27 Mac member Amontae

GORDON began appearing in videos and photos with ██████ on GORDON's Facebook

page. ██████ lso began commenting on several of GORDON's posts from GORDON's

Facebook page. Investigators received additional information regarding the Pressure Gang

from St. Louis City detectives and the Federal Bureau of Investigation as detailed below.

## Pressure Gang

7.      Investigators began monitoring ██████ publically accessible Facebook

page.  Investigators conducted open source database checks and observed that ████████

turned seventeen years old on February 28, 2018.  Investigators observed that since January

16, 2018, numerous photos of ██████ were posted to th ████████ Facebook page.

These photos depict ██████ in possession of numerous handguns, assault pistols, and

assault rifles.  In one of these photos, ██████ appears with GORDON who is holding an

AR-15 assault rifle while ██████ is holding two handguns. Investigators also observed

numerous photos of ██████ with large quantities of U.S. currency. ██████ has made

posts indicating that he "has gas and is mobile." Investigators know that this terminology is a

street euphemism for being in possession of narcotics for sale. ██████ is stating that he is

in a vehicle and has narcotics for sale and is soliciting individuals to contact him who would

like to purchase narcotics.

8.      Investigators also observed numerous public posts made by ██████ to the

page where he references his participation in the "Pressure Gang" and numerous photos where

██████ is in possession of firearms and wearing t-shirts and hoodies that say "Pressure

Gang."  Investigators received information from the St. Louis Federal Bureau of Investigation

and the St. Louis City Police Department that the Pressure Gang was a St. Louis City based

gang that was operating in south city, south of Cherokee street and north of Bates.  Information provided to investigators was that members of the gang are responsible for numerous carjackings and the distribution of heroin in the area the gang claims as theirs (as described above.)

9.      On February 11, 2018, investigators observed that a post was added to the ▮▮▮▮▮▮▮▮ Facebook page that stated, "Tech 9 for trade."  Investigators believe that ▮▮▮▮▮▮ is referring to the assault pistol Tech 9 that ▮▮▮▮▮ appears to be in possession of in numerous photos that have been posted to the ▮▮▮▮▮▮▮ Facebook page.

10.      On February 13, 2018, investigators observed that a post was added on the ▮▮▮▮▮▮▮ Facebook page that stated, "Glock 19 for trade."  Investigators observed a Facebook account under the name Pyg Wayne posted a response stating, "Nbox Me." Investigators believe that this is a reference to ▮▮▮▮▮ and the user of Pyg Wayne to continue the illegal firearms exchange through Facebook Messenger.[2]

11.      Based on this information, investigators received authorization to collect precision location information (PLI) from the cellular device assigned number 314-319-5904, that was posting photos to the Facebook page under the name ▮▮▮▮▮▮▮, on March 2, 2018, by the Honorable Judge Shirley P. Mensah, in the Eastern District of Missouri. Investigators began monitoring the location of this device and observed that in the early

---

[2] Investigators are aware that Facebook, "is a social networking website and service where users can post comments, share photographs and links to news or other interesting content to the Web, play games, chat live, and stream live video. Shared content can be made publicly accessible, or it can be shared only among a select group of friend or family or a single person." (Definition from Lifewire, February 2, 2018).  Facebook also allows for direct messaging, also known as instant messaging, on Facebook's Messenger feature.

morning hours and late in the evenings, the device was frequently located in the area of Cherokee and Pennsylvania. Investigators are aware that the Pressure Gang claims this area.

12.     In addition to collecting the PLI information for 314-319-5904, investigators also collected the location of the home based Wi-Fi networks that the device assigned to 314-319-5904 used to login into, post to, and upload photos to the ███████████ Facebook page.  Investigators observed that one of the locations frequented by this telephone was directly next door to **subject location #1**, at 3518 Pennsylvania.

13.     Based in the usage of Facebook by GORDON and ████████, on March 12, 2018, investigators obtained authorization to retrieve the inbox messages for the Facebook Page under the name ███████████, by the Honorable Judge David D. Noce. On April 23, 2018, investigators obtained the response from Facebook for those messages and observed numerous inbox messages, as well as, numerous photos sent via inbox to and from the Facebook page under the name Amontae GORDON to the Facebook Page under the name ███████████.

14.     In their review of the Facebook inbox messages, investigators observed the following interactions between GORDON and ████████:

a. On March 2, 2018, ████████ placed an outgoing message to GORDON stating, "I gotta mac 90" followed by a second message stating "Trade for da R." Based on knowledge of the case and photos from the ████████ Facebook page, investigators believe that ████████ is indicating to GORDON that he has a Mac 90 firearm that he will trade. GORDON's Facebook page then responded to these two messages by sending the ████████ Facebook Page, "Ler me sew it" and "See."

b.  On March 4, 2018, investigators observed that Gordon's Facebook page sent a message to the ▇▇▇ Facebook Page stating "Mf Sellin a 9 luhbruh." ▇▇▇ page responded "What kinda 9 & how much." GORDON's page then sent a message stating, "A mellunuin compact & $250.00." ▇▇▇ page then requested a photo from GORDON. Investigators believe that this conversation was GORDON attempting to sell a 9mm handgun to ▇▇▇.

### Subject Location #1

15.  During the investigation, **subject location #1** has been identified as a potential stash location for the Pressure Gang. Investigators have observed numerous members of the gang, including ▇▇▇, frequenting the residence and have seen behavior consistent with narcotics trafficking from **subject location #1**. Investigators have also observed ▇▇▇ carrying a firearm into the residence. ▇▇▇ has posted several photos on Facebook while in front of subject **location #1** with multiple Pressure Gang members who have firearms. Investigators believe that based on the investigation described below, that Pressure Gang members use **subject location #1** as a stash location for narcotics and firearms for the gang.

16.  On January 28, 2018, a photo was posted to the ▇▇▇ Facebook page depicting multiple Pressure Gang members with handguns. Investigators observed that the photo was taken in front **subject location #1**.

17.  On March 2, 2018, investigators began conducting surveillance of **subject location #1,** and immediately observed ▇▇▇ coming in and out of **subject location #1.**

18.  On March 6, 2018, investigators conducted surveillance of **subject location #1.** Investigators observed ▇▇▇ exit **subject location #1** and approach vehicles that pulled up in front of or across the street from **subject location #1.** ▇▇▇ exited **subject**

10

**location #1,** approached the vehicles, met with subjects at the passenger side window for a short duration, and then returned **subject location #1**. The vehicles would then leave the area. Investigators are aware that this behavior is consistent with hand-to-hand narcotics trafficking, where customers contact ▮▮▮▮ or approach the house in an attempt to purchase narcotics. Investigators also observed several vehicles located in front of the residences that have Missouri license plates that are not on file or stolen, including a blue colored sedan which was later determined to be stolen following ▮▮▮▮ arrest.

19.     During the surveillance, investigators observed four males exit **subject location #1** and enter into a maroon Mitsubishi Galant with a Missouri plate that did not come back on file. Investigators maintained surveillance as these subjects travelled directly to 1148 June. Investigators observed the individuals enter 1148 June for a short period before exiting the residence and entering a black Chrysler 300 with tinted windows. Based on this pattern of behavior and the switching of multiple vehicles, investigators believed that Pressure gang members are using both 1148 June and **subject location #1**. A federal search warrant was subsequently executed at 1148 June and heroin/fentanyl was recovered along with baggies and empty capsules.

20.     On March 12, 2018, investigators were monitoring the cellular number utilized by ▮▮▮▮ and observed that it was in the area of 1148 June. Investigators observed that the location of the device began travelling south towards St. Louis City and **subject location #1**. Investigators established surveillance on **subject location #1**, and observed the same blue colored sedan described in paragraph 18 arrive in front of the residence. Investigators then observed ▮▮▮▮ exit the vehicle with an AK-47 style assault rifle. Investigators have observed numerous photos on the ▮▮▮▮ Facebook page where he and other

11

members of the gang display an AK-47 rifle. Investigators observed ▮▮▮▮▮ approach **subject location #1** with another unidentified male and enter into the residence. Investigators then observed ▮▮▮▮▮ and the unknown male exit the residence without the rifle and enter back into the vehicle. Investigators know that gang members will obtain firearms to commit crimes, but that they will not want to be in possession of them for long periods of time. Investigators also know that gang members will store firearms at locations that they can access quickly in order to retaliate within a short period of time, or commit crimes of opportunity. Investigators believe the **subject location #1** is such a storage place and that ▮▮▮▮▮ was depositing a firearm there for a later purpose so that he could accesses it quickly. Investigators are also aware **subject location #1** is in centrally located within the gang claimed territory and represents a storage location that is close to the gangs area of focused criminal activity.

21.     On March 14, 2018, investigators received authorization from the Honorable Judge David D. Noce to execute a search warrant at the address of 3518 Pennsylvania and 1148 June.  During the execution, investigators located 84.5 gross grams of suspected fentanyl as well as a book bag containing numerous empty pill capsules and plastic baggies; items which are often associated with heroin/fentanyl distribution from June.

22.     At the same time as investigators were executing the search warrant on 1148 June, investigators established surveillance in the area of Peabody Court in the Clinton Peabody Housing complex.  During the surveillance, investigators observed that ▮▮▮▮▮ posted a live Facebook video from inside an apartment along with several other males. ▮▮▮▮▮ and other males, including Carvontate BROWN, are seen waving handguns and AK-47 rifles in front of the screen.  At this time, investigators observed ▮▮▮▮▮ and two of these males exit an apartment and proceed directly to a vehicle that investigators had observed ▮▮▮▮▮ operate

12

on numerous occasions and that had stolen plates attached to it. Investigators followed ▮▮▮▮
to **subject location #1**, and observed ▮▮▮▮ and the males enter into the residence.

23.     Investigators maintained surveillance and observed ▮▮▮▮ and several other
members leave **subject location #1** and enter back into the vehicle. Members of the St. Louis
Metropolitan Police Department attempted a traffic stop of the vehicle, which refused to yield.
The vehicle was "spiked stripped" and still refused to yield. At this time, St. Louis Metropolitan
Police Department detectives observed the front passenger of the vehicle, later identified as
▮▮▮▮ throw a handgun from the vehicle that was later recovered by detectives. They also
observed ▮▮▮▮ throwing clear plastic baggies from the vehicle. Detectives were unable to
locate the baggies, which investigators believed to be narcotics.

24.     Shortly thereafter, the driver of the vehicle pulled to the curb and Carvontate
BROWN exited the back driver's side. A juvenile exited the driver seat. ▮▮▮▮ exited the
passenger seat and ran for a short distance before investigators took ▮▮▮▮ into custody.
Investigators later determined the vehicle was stolen and recovered an AK-47 rifle from the rear
driver's seat and a small quantity of capsules that contained fentanyl. Investigators observed
that the color of the capsules recovered from the vehicle matched the color combinations of the
empty capsules recovered from the search warrant at 1148 June.

25.     Prior to ▮▮▮▮ arrest, investigators observed ▮▮▮▮ exit the front door of
**subject location #1**.

26.     Based on previous physical and electronic surveillance, (as described in
paragraph 21) on March 14, 2018, investigators obtained a federal search warrant for the
residence located directly next to **subject location #1** at 3518 Pennsylvania. Based on the
observations just prior to ▮▮▮▮ arrest, investigators determined that ▮▮▮▮ and the

13

Pressure Gang members were utilizing **subject location #1,** and not 3518 Pennsylvania as previously believed, as a stash house. Based on this new information, investigators did not execute the warrant for 3518 Pennsylvania.

27.     3518 Pennsylvania and **subject location #1** are right next to each other and share a common gangway. Investigators have also observed that many of the Pressure Gang members utilize this shared gangway to come into the street and a similar gangway across the street to access the rear alleys to meet customers for narcotics transactions. Investigators believe that the Pressure Gang members utilize the gangway between 3518 Pennsylvania and **subject location #1** in order to access the rear door of **subject location #1**. Investigators believe that this is a technique utilized by the gang to make it more difficult for law enforcement officers to locate stash locations. During this investigation, investigators have seen gang members and ██████████ utilize the front door, but predominately the individuals conducting hand to hands transactions utilize the shared gangway between 3518 Pennsylvania and **subject location #1**, before crossing the street to conduct narcotics transactions**.**

28.     In April of 2018, investigators and detectives from the St. Louis City Police Department used a confidential source (hereinafter referred to as CS) in the presence of an Undercover Officer (hereinafter referred to as UC), to conduct a controlled purchase of heroin from the Pressure Gang.[3]  The CS and UC made a controlled call to a cellular device known to the CS to coordinate heroin sales for Pressure Gang members. The CS and UC were told to proceed to the area of Potomac and Pennsylvania. Investigators established surveillance in the

---

[3] This CS is working for St. Louis Metropolitan Police Department in exchange for judicial consideration on a pending St. Louis City narcotics violation. The CS has provided information regarding members of the Pressure gang that has been independently corroborated by investigators and has conducted controlled purchases from Pressure Gang members and other narcotics traffickers that has resulted in the seizure of narcotics.

area of **subject location #1** and immediately observed a black four door sedan arrive in front of **subject location #1** and a black male wearing a dark blue hooded jacket and sweatpants with a white stripe down the leg exit and enter between **subject location #1** and 3518 Pennsylvania. A short time later, investigators observed this same male exit from between the same residences and proceed across the street in between two houses and return in between 3518 Pennsylvania and **subject location #1**.    After these two trips, investigators observed the CS and UC arrive in the area and proceed to the alley located across the street from **subject location #1**. Investigators then observed the same black male exit again from in between 3518 Pennsylvania and **subject location #1** and proceed west across the street and between two houses. Surveillance units then observed the male approach the vehicle with the UC and CS and conduct a hand-to-hand transaction. Investigators then observed the male return in between the residences at 3518 Pennsylvania and **subject location #1**.

29.    Investigators conducted constant surveillance of the UC and CS on the way to a predetermined location. Once at this location, investigators recovered approximately 17 capsules that contained an off-white powdery substance, believed to be narcotics. The UC stated that a black male wearing a darker color hoodie and sweatpants with a white stripe approached the vehicle and separated out the 17 capsules from approximately 50 capsules in his hand and exchanged the capsules for Official Advanced Funds (OAF) before proceeding east towards Pennsylvania.

30.    Investigators have continued to conduct surveillance of **subject location #1** and have observed on several occasions vehicles with tinted windows and with plates that do not come back to the vehicle approach **subject location #1,** drop off several black males who then enter into the front of **subject location #1** or walk between the 3518 Pennsylvania and **subject**

15

**location #1.** Shortly after their arrival, investigators observed some of those same males begin exiting from **subject location #1** or from between **subject location #1** and 3518 Pennsylvania and begin meeting vehicles in the alley west of the residence.

31.     Investigators believe that **subject location #1** is being used as a base of heroin distribution by members of the Pressure Gang and as a stash location for firearms for the gang as well.

**Subject Location #2**

32.     Based on the information detailed above beginning in paragraph 1, on February 8, 2018 investigators began obtaining the home based Wi-Fi that GORDON was utilizing to post videos and photos to the Facebook Page under the name Amontae GORDON. Investigators observed that one of the IP addresses was operated by Charter communications. Investigators served Charter with a court order and received a response indicating that the address and billing information for the Wi-Fi that GORDON had used to post a video of himself with a handgun was from **subject location #2.**

33.     Based in this information, investigators began conducting surveillance on **subject location #2.** Investigators observed a vehicle, registered to an Antonio Perkins, outside **subject location #2.** Based on social media surveillance and exploitation, investigators are aware that a Facebook Page under the name Antonio Perkins is friends with multiple members of the 27 Mac gang, and posted a video approximately one month prior to the surveillance in which he is riding in a vehicle and displays an assault pistol and a separate Glock style handgun with an extended magazine to the screen as he drives.

34.     On April 11, 2018, investigators conducted surveillance of **subject location #2** and observed a series of logins to the Amontae Gordon Facebook page indicating the logins

were originating from **subject location #2's** associated IP address. Upon arrival, investigators observed an older model Oldsmobile sedan with Missouri license plate DM8R5D, which was registered to a Shanta Gordon and Cassell Sacus at 3240 Liberty St., St. Louis, MO 63111. It should be noted that open database checks and criminal database checks indicated that Amontae GORDON had previously listed 3240 Liberty as an address associated with him. Investigators also observed open database checks indicated that Shanta Gordon had no listed apartment number or letter for 3240 Liberty. Investigators also observed that beginning in March of 2018, the open database indicated that Shanta Gordon began having open database history at 3200 Dakota with no listed apartment number or letter.

35.    Investigators also observed a black four-door sedan travel south on S. Compton Avenue, with the driver on a cell phone. Investigators observed the vehicle stop at the intersection of Dakota and S. Compton and make a u-turn parking on the east side of S. Compton. At this time, investigators observed Amontae GORDON exit the far west door of the duplex at **subject location #2**. Investigators observed GORDON was wearing a black Nike hoodie and dark jeans. Investigators are aware that GORDON posted a photo on Facebook on March 11, 2018, while wearing the same outfit. Investigators observed GORDON approach the vehicle and enter into the passenger side of the vehicle and remain for approximately forth-five seconds to one minute. GORDON then exited the vehicle and returned to the far west door of **subject location #2** and entered inside.

36.    On April 29, 2018, investigators observed that a photo was posted publically to the Amontae GORDON Facebook page showing GORDON standing in the rear of **subject location #2** holding a large quantity of U.S. currency.

17

37.     Based on private communication between **GORDON** and ▮▮▮▮ on Facebook, posts to **GORDON's** Facebook page, and surveillance of **GORDON** from **subject location #2,** investigators believe that **GORDON** is using subject **location #2** to store narcotics and firearms investigators believe evidence of narcotic sales evidence will be located at **subject location #2.**

38.     On May 1, 2018, investigators received a response from Ameren Utility Company that indicated, according to their records, the ground floor unit located at **subject location #2** is labelled "1F" and has electric utilities in the name of Shanta Gordon. Their records also indicate that the upstairs unit is labelled "2F" and has not had working electric utilities since 2008. Investigators also conducted surveillance of **subject location #2** on May 1, 2018,  and observed GORDON exit **subject location #2** from the far west door, the door that leads to the upstairs floor of **subject location #2.** Investigators conducted open source database checks which indicated that Shanta Gordon appears to be a relative of Amontae GORDON.

## IV. CONCLUSION

39.     Based on previous gang investigations agents are aware that gangs will often attempt to insulate themselves from law enforcement while trafficking narcotics or committing other crimes. Investigators have observed gang members in the St. Louis area utilize out of state cellular numbers, cell phones used by multiple members of the gang, stolen vehicles, stolen plates, stash locations for narcotics and firearms, third party individuals to rent vehicles and houses for them, and social media platforms to facilitate and protect their gang's illegal activities. Investigators are also aware that often gangs will utilize residences to store firearms or bags and kits that contain firearms, changes of clothing, gloves, and masks,

so that they can be grabbed and loaded in a vehicle to quickly conduct acts of violence or retaliation on rival gang members.

40.     Investigators have established that ███████ s a member of the Pressure Gang and that he distributes heroin on behalf of the gang. Investigators have also established that WILKES and other members of the gang are constantly in possession of firearms in furtherance of their illegal activities. Investigators have received information that ███████ currently has charges pending in St. Louis County for Armed Robbery 1st degree for his involvement in a carjacking.  Investigators also arrested ███████ leaving **subject location #1** and was in possession of a handgun and heroin/fentanyl. ███████ was also arrested with two other members of the Pressure Gang during that incident. Investigators are also aware that multiple members of the Pressure Gang who associate with ███████ have already been charged or are currently wanted for narcotics distribution, Armed Criminal action, Unlawful Use of a Weapon, and Resisting Arrest in St. Louis.

41.     Investigators believe that ███████ and other unknown members of the Pressure Gang are utilizing **subject location #1** and Amontae GORDON is using **subject location #2** as basis of operation for their narcotics trafficking, carjacking and firearms storage.  Investigators have observed several vehicles at **subject location #1** that have stolen Missouri plates or Missouri plates not on file. Investigators have observed traffic and behavior consistent with hand to hand narcotic's trafficking at both **subject location #1** and **subject location #2.** Investigators have also utilized electronic surveillance of ███████ to show that he has been located at both **subject location #1, and,** electronic surveillance of GORDON to show that he has been located at **subject location #2.** Further electronic surveillance has shown that WILKES has accessed the Wi-Fi network from next door to **subject location #1**

to access the Facebook page under the name ███████. It has also shown that GORDON has accessed the Wi-Fi network from next door to **subject location #2** to access the Facebook page under the name Amontae GORDON.

42.     Your affiant submits this affidavit in support of search warrants for the locations which are within the jurisdiction of the reviewing Court. I have reviewed the descriptions of the premises, and believe them to be an accurate, particularized description for each of the premises to be searched at the addresses listed above.

43.     From the information set forth, I believe that evidence as set forth in the attached "list" is contained within the above locations, and that said items constitute evidence of narcotics trafficking and firearms storage.

44.     Based in this information investigators believe that there is probable cause that narcotics, evidence of narcotics sales, and firearms will be located in **subject location #1** and **subject location #2.**

## V. REQUEST FOR SEALING

45.     In view of the ongoing nature of the investigation, and the risk of harm to informants, cooperating witnesses, to agents, and to the investigation, which would exist should the information in this affidavit be prematurely disclosed, I respectfully request that this affidavit and associated records concerning this search be sealed until further order of the Court.

_____
DATE

Christopher Grimm
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this 2nd day of May, 2018.

HONORABLE NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

21

**Attachment A**

1.     Controlled Substances;

2.     Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons; and

3.     Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

4.     Telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking.

5.     Photographs, in particular photographs of co-conspirators, of assets, and/or of controlled substances.

6.     United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances;

7.     Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

8.     Papers, tickets, notes, schedules, receipts and other items relating to travel, including, but not limited to, travel to and from St. Louis, Missouri and elsewhere

9.     Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys;

10.    Firearms and/or weapons.

11.    Cellular phones.